IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL RETAIL SYSTEMS, INC., et al. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-672 |
| MARKEL INSURANCE COMPANY | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                    **APRIL 25 , 2018**

Presently before the Court in this insurance coverage dispute is Defendant Markel Insurance Company's ("Markel") Motion to Compel Supplemental Discovery Responses (ECF No. 32). For the following reasons, the Motion will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL HISTORY[1]**

The parties' dispute involves a Commercial Crime Policy issued by Markel to Plaintiff National Retail Systems, Inc. ("National Retail") as the Named Insured. (Policy, Declarations, ECF No. 1-1.) Plaintiff Keystone Freight Corporation ("Keystone") and a number of other entities are additional insureds under the Policy pursuant to Endorsement 1. (Policy, Endmt. 1.) Among the Policy's Insuring Agreements is one for Employee Theft, which provides, in relevant part:

> [Markel] will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(Policy § A.1.)

---

[1] The factual background is generally derived from Plaintiffs' Complaint and the documents attached thereto.

Plaintiffs allege that during a several month period in 2015 and 2016, two employees of Keystone, Richard Joseph Allen ("Allen") and Brian Keith Allison ("Allison"), acting under false pretenses and without permission, sold approximately seventy trailers and miscellaneous scrap metal owned by Keystone Freight and kept the proceeds. (Compl. ¶¶ 13-17, ECF No. 1.) Plaintiffs allege that Allen's and Allison's theft caused National Retail and Keystone to sustain a loss in excess of $75,000. (Compl. ¶ 18.) National Retail reported the theft to the authorities, and Allen and Allison subsequently pled guilty to the resulting charges. (*Id*. ¶¶ 19-21.)

On or about April 26, 2016, National Retail notified Markel of the loss and sought coverage under the Policy. (*Id.* ¶¶ 22-24.) By letter dated July 21, 2006, Markel denied coverage based on the following Policy exclusion (the "Prior Act Exclusion"):

> D. Exclusions
>> 1. This Policy does not cover:
>>> * * *
>>> b. Acts Committed By Your Employees Learned Of By You Prior To The Policy Period.
>>>
>>> Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this Policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.[2]

(Disclaimer Ltr., ECF No. 1-4; Policy § D.1.b.) In its denial letter, Markel stated that the Prior Act Exclusion bars coverage because:

> [T]he employee involved in the loss, Brian Allison had a criminal record prior to this loss. The public criminal records for Brian Allison show a previous felony and two misdemeanors. He also committed a dishonest act while in your employment in 2004.

---

[2] In its prefatory paragraphs, the Policy states: "Throughout this Policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations. The words 'we', 'us' and 'our' refer to the company providing this insurance." (Policy 1.)

2

(Disclaimer Ltr. 2.)[3]

On February 14, 2017, Plaintiffs filed a Complaint against Markel alleging that its denial of coverage constitutes a breach of contract. (Compl. ¶¶ 31-35.) On March 7, 2017, Markel filed an Answer to the Complaint (ECF No. 3). On March 24, 2017, Markel filed a Motion requesting a transfer of venue to the United States District Court for the District of New Jersey. (ECF No. 8.) The Motion to transfer venue was denied by Order dated April 4, 2017.) (ECF No. 14.)

Discovery in this matter has been protracted, necessitating several teleconferences with the Court and amendments to the scheduling order.[4] On March 16, 2018, following the most recent teleconference, an Order was entered permitting Defendant to file a motion to compel responses to outstanding interrogatories and document requests within ten days, and requiring Plaintiffs to respond to such motion within ten days thereafter. (ECF No. 31.) On March 26, 2018, Defendant filed the instant Motion. Plaintiffs filed their Response on April 5, 2018. (ECF No. 34.)

## II. LEGAL STANDARD

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." *Marroquin-Manriques v. I.N.S.*, 699 F.2d 129, 134 (3D Cir. 1983). Pursuant to Federal Rule of Civil Procedure 26, parties may obtain discovery regarding:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

---

[3] In addition to denying coverage based on the Prior Act Exclusion, Markel also reserved its rights to revise its position and raise any other potentially applicable coverage issues or defenses. (Disclaimer Ltr. 2.)

[4] On February 27, 2018, the parties participated in a settlement conference before Magistrate Judge Lynne A. Sitarksi. (ECF No. 28.) Despite the best efforts of Magistrate Judge Sitarski, an amicable resolution of this matter was not reached.

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). While the scope of discovery under the Federal Rules is broad, it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "Indeed, Rule 26(b)(1) imposes 'two content-based limitations upon the scope of discovery: privilege and relevance.'" *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 319 F.R.D. 214, 217 (W.D. Pa. 2017) (quoting *Trask v. Olin Corp.*, 298 F.R.D. 244, 257 (W.D. Pa. 2014)). In addition, Rule 26(b)(2)(C) provides that — on motion or its own initiative — the court must limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1), (4). A party moving to compel discovery bears the initial burden of establishing the relevance of the requested information. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). The burden then shifts to the party resisting disclosure to show that "the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013) (citing *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 193 (M.D. Pa. 2011)).

## III. DISCUSSION

Markel seeks an order compelling Plaintiffs to supplement their responses to three interrogatories and two document requests, which Markel contends are "narrowly tailored" to seek information relevant to the Prior Act Exclusion.[5] Markel asserts that the Prior Act Exclusion is triggered because in 2004, Allison was fired from Keystone for theft of company time. (Def.'s Mot. 2.) Allison's 2004 termination notice was on the letterhead of "Precision Werks, a division of National Retail Transportation, Inc.," and was signed by Louis Piscitelli, Sr. (Def.'s Mot. Ex. 3.) According to Plaintiffs, Piscitelli is "the vice president of maintenance for Precision Werks, . . . a division of corporate affiliate National Retail Transportation, Inc.," and in that capacity, "Piscitelli manages the maintenance aspects of all the operating companies, including the Plantiffs." (Cluver Decl., Pls.' Opp. Ex. 11, ECF No. 34; *see also* Pls.' Opp. Ex. 12.) Markel argues that in order to pursue its defense based on the Prior Act Exclusion, it is entitled to discover: (1) which company employed Piscitelli; (2) the role Piscitelli played in that company; and (3) which officers and directors received notice of Allison's 2004 termination.

In response, Plaintiffs argue that Markel already has the requested information. (Pls.' Opp. 1, 8-9,10.) Plaintiffs further argue that the disputed discovery requests are not "narrowly tailored" but rather, are expansive and would require "National Retail to identify hundreds of employees and produce potentially hundreds of employee files." (*Id.* at 1.) According to Plaintiffs, Markel has failed "to justify its requests given the burden and expense of the proposed discovery [versus] the speculative nature, at best, of any likely benefit." (*Id.*)

---

[5] The discovery requests in dispute are Interrogatory Nos. 1, 2, and 6 from Defendant's Second Set of Interrogatories Directed to Plaintiffs, and Document Request Nos. 1 and 4 from Defendant's Second Set of Requests for the Production of Documents Directed to Plaintiffs. (Def.'s Mot. Exs. 7, 8.)

The discovery requests at issue in Markel's Motion are as follows:

**Interrogatory No. 1.**

Identify all positions held by Louis Piscitelli, Sr. within Precision Werks, National Retail Systems, Inc., and Keystone Freight Corporation. For each such position, identify the dates he held the position, the scope of his responsibilities (including whether he was responsible to supervise Brian Allison), the individuals to whom he reported (as well as the corporate titles of these individuals), and the individuals who reported to him (as well as the corporate titles of these individuals).

**Interrogatory No. 2.**

Identify every person with whom Louis Piscitelli, Sr. communicated about the termination of Brian Allison on or about June 28, 2004 and the employment of Brian Allison on or about March 7, 2015. This includes, but is not limited to, identifying any persons from whom Mr. Piscitelli obtained authority to terminate Mr. Allison.

**Interrogatory No. 6.**

Describe in detail the process from 2003 through 2005 that Precision Werks followed to terminate an employee of Precision Werks. Without limitation, describe all departments (including payroll, human resources, etc.) that received notice of the termination as well as the individuals who were responsible for those departments. This includes, but is not limited to, describing the actions that those departments took after receiving notification of the termination, which actions include, but are not limited to, removing the employee from payroll, paying federal and state taxes for the employee, and administering any employee benefit programs such as health benefit plans or retirement plans. Identify any and all partners, members, managers, officers, directors and/or trustees of National Retail Systems, Inc., Keystone Freight Corporation, and/or Precision Werks who were responsible for payroll and other employee benefits.

**Document Request No. 1.**

Produce ALL DOCUMENTS related to Mr. Louis Piscitelli, Sr. including, but not limited to, his personnel file as well as the personnel files of all persons to whom he reported as well as the personnel files of all persons who reported to him.

**Document Request No. 4.**

Produce ALL DOCUMENTS related to payroll (including, but not limited to, any federal or state tax records related to the payment of federal and local taxes on

behalf of employees) and to any other employee benefits (including, but not limited to, health benefits, retirement benefits, etc.) provided to employees of Precision Werks, National Retail Systems, Inc., and Keystone Freight Corporation from 2003 through 2005. This includes, by way of example only, the payroll records for Precision Werks throughout this entire time period as well as any records that show who received notice of the payroll records including, but not limited to, the identity of partners, members, managers, officers, directors and/or trustees of National Retail Systems, Inc., Keystone Freight Corporation, and/or Precision Werks who were responsible for payroll. By way of another example, this request includes any records related to the termination of any employee's health benefit plan such as a COBRA letter as well as any records that show who received notice of the employee benefits records including, but not limited to, the identity of the partners, members, managers, officers, directors and/or trustees of National Retail Systems, Inc., Keystone Freight Corporation, and/or Precision Werks who were responsible for the administration of any employee benefit plans.

As to Interrogatory Nos. 1 and 2, the following information is potentially relevant to Markel's defense: (1) the positions and titles held by Piscitelli; and (2) the identities and titles of Piscitelli's supervisors and subordinates, if any, to whom he reported the 2004 termination of Allison. Markel has failed to articulate how the identities and titles of every one of Piscitelli's superiors and subordinates during his 34-year tenure are relevant to the issues in this case, or how the dubious relevance of this information outweighs the substantial burden and expense of its production. Similarly, Markel has not established the relevance or proportionality of its request for communications regarding Allison's hiring in 2015, unless such communications also referenced Allison's 2004 termination. Accordingly, as to these requests, the Motion will be granted only as to the potentially relevant information noted above.

As to Interrogatory No. 6, Markel's Motion limited the request as follows:

"[Markel] seeks only information that relates to Mr. Allison's 2004 termination. That is to say, [Markel] seeks to obtain evidence about the different departments and employees (which includes officers and directors) of Plaintiffs (or any of their corporate subsidiaries) who received notice about Mr. Allison's 2004 termination."

(Def.'s Mot. 4.) As limited, Interrogatory No. 6 seeks potentially relevant information that is proportional to the needs of the case, and the Motion will be granted.

Document Request No. 1 seeks, without any time limitation, all documents related to Piscitelli, including his personnel file and the personnel files of all of his supervisors and subordinates. As with Interrogatory Nos. 1 and 4, Markel has not established the relevance or proportionality of documents relating to Piscitelli's supervisors and subordinates that have no connection to Allison's 2004 termination. This request is also problematic because it seeks personnel files, and Markel has not explained why it believes those files contain relevant information or why the information cannot be obtained by less intrusive means, such as depositions. *See Westport*, 319 F.R.D. at 218 ("Because there is a strong public policy against disclosure of personnel information, such requests are subject to a heightened relevancy standard.") Under these circumstances, we will grant the Motion only as to documents related to Piscitelli that identify his title or position with Plaintiffs or that refer to the 2004 termination of Allison.

Finally, Markel's Motion modified Document Request No. 4 as follows: "[Markel] will limit this request to records that are related to Mr. Allison's 2004 termination." (Def.'s Mot. 5.) The Motion will be granted as to this request, as limited.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted in part and denied in part. An appropriate order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**