IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL RETAIL SYSTEMS, INC. ET AL.  :
: CIVIL ACTION
v. :
: NO. 17-672
MARKEL INSURANCE COMPANY :

### MEMORANDUM

**SURRICK, J.**                                                                  **AUGUST 14, 2020**

Presently before the Court are Defendant's Motion for Summary Judgment (Def. MSJ, ECF No. 40) and Plaintiffs' Motion for Partial Summary Judgment (Pl. MPSJ, ECF No. 41). This case concerns whether a Commercial Crime Policy that covers losses resulting from employee theft, but excludes losses caused by an employee with a known history of dishonesty, covers a theft caused by two employees, only one of whom had a known history of dishonesty. We conclude that it does.

## I.   BACKGROUND

### A.   Markel issues a Commercial Crime Policy covering National Retail and Keystone Freight

Defendant Markel Insurance Company issued a Commercial Crime Policy to Plaintiff National Retail Systems, Inc. for the period beginning August 1, 2015 and ending August 1, 2016.  (Policy, Def. MSJ, Ex. 5.)  Plaintiff Keystone Freight Corporation is an additional insured under the Policy.  (*Id.* at Endorsement 1.)  The relationship between Keystone Freight and National Retail is unclear, but there is no dispute that they are affiliated.

The Policy covers employee theft:

> We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(Policy § A(1).)  There are some exclusions, however.  (*See generally* Policy § D (Exclusions).)  At the heart of this dispute is the "Prior Dishonest Act Exclusion," pursuant to which the Policy does not cover:

> b.  Acts Committed By Your Employees Learned Of By You Prior To The Policy Period
>
> Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this Policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

(Policy § D(1)(b).)

### B. Two Keystone Freight employees steal company property

Keystone Freight employed Brian Allison in 2004.  (Termination Letter, Def. MSJ Ex. 1.)  On June 28, 2004, Allison's employment with Keystone Freight was terminated by Louis Piscitelli, a vice president at National Retail.  (*Id.*)  Piscitelli indicated in Allison's termination letter that Allison had "punched in for work and [was] never seen for the entire day."  (*Id.*)

In 2015, Keystone Freight rehired Allison.  (Piscitelli Dep. 166, Pl. Resp. Ex. 11, ECF No. 43.)  Between 2015 and 2016, Allison and another employee, Joseph Allen, sold 74 Keystone Freight trailers and miscellaneous metal as scrap.  (*See generally* Dolan Mem., Pl. MPSJ Ex. 2.)  The facts of these sales are unclear, but neither National Retail nor Keystone Freight ever realized the proceeds of the sales.  Donald Dolan, National Retail's security director, questioned Allison and Allen about the sales.  (Dolan Mem. 3-5.)  Allen maintained that Allison had told him to scrap the trailers and give the proceeds to Allison.  (*Id.* at 3.)  According to Dolan, Allison told him that he and Allen had shared the proceeds.  (*Id.* at 4.)  Dolan reported that Allen and Allison "each admitted to taking part in a conspiracy to use their positions within the company to retrieve and salvage assets . . . without direction to do so by or on behalf of the

company." (*Id.*)

Both Allison and Allen filed grievances regarding this issue with Keystone Freight. (Grievances, Pl. MPSJ Ex. 6.) In his grievance, Allison stated that he had scrapped some miscellaneous items with the permission of Piscitelli, and that employees were allowed to split the proceeds amongst themselves for lunch money. (*Id.* at 1.) He also represented that he was unaware of the trailers that Allen had scrapped. (*Id.*) As for Allen, he stated in his grievance that Allison told him that they had authorization to scrap the trailers, and that Allison instructed him to scrap them. (*Id.* at 3.)

Allison and Allen were charged by the State of North Carolina with larceny by employee, possession of stolen goods or property, obtaining property under false pretenses, and felony conspiracy to commit larceny by employee. (Allen and Allison Warrants, Pl. MPSJ Ex. 3.) In November of 2016, Allison entered a plea of guilty to all charges. (Allen and Allison Plea Tr., Pl. MPSJ Ex. 4.) In January of 2017, Allen entered an *Alford* plea. (*Id.*)[1]

On April 27, 2016, Plaintiffs filed an insurance claim for the lost trailers with Markel. (Claim Email, Pl. MPSJ Ex. 5.) The total loss claimed was $696,900. (Claim Summary, Pl. MPSJ Ex. 7.) On July 21, 2016, Markel denied coverage. (Coverage Disclaimer, Pl. MPSJ Ex. 8.) In so doing, Markel cited to the Prior Dishonest Act Exclusion:

> For the reasons stated below, [Markel] disclaims coverage for this loss. No payments under the above policy will be made for this loss. . . .
>
> According to the information provided to us, the independent adjuster at Engle Martin & Associates reports, the employee involved in this loss, Brian Allison had a criminal record prior to this loss. The public criminal records for Brian Allison show a previous felony and two misdemeanors. He also committed a dishonest act

---

[1] "In *North Carolina v. Alford*, 400 U.S. 25 (1970), the court held that a defendant may enter a guilty plea containing a protestation of innocence when the defendant intelligently concludes that a guilty plea is in his best interest and the record contains strong evidence of actual guilt." *State v. Rowsey*, 472 S.E.2d 903, 909 n.1 (N.C. 1996).

while in your employment in 2004.

(*Id.* at 1.)

On February 14, 2017, Plaintiffs filed a Complaint against Markel for breach of contract. (Compl., ECF No. 1.) On July 2, 2018, Plaintiffs and Markel filed their respective motions for summary judgment. (ECF Nos. 40-41.)

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, we must weigh all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). "For its part, '[t]he non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials [in] his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Id*. at 288-89 (quoting *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. at 289 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conversely, 'where a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.'" *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).

**III.    DISCUSSION**

The parties dispute whether the Prior Dishonest Act Exclusion precludes Plaintiffs from recovering for the loss of the trailers.[2] We conclude that it does not.

    **A.    Principles of insurance policy interpretation**

The parties agree that the Policy should be interpreted under New Jersey law.  "An insurance policy is a form of contract, and the interpretation of contract language is a question of law."  *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012) (citations omitted).  "Generally, an insurance policy should be interpreted according to its plain and ordinary meaning."  *Vorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992).  "[C]onstruing insurance policies, as with any contract, requires a broad search 'for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies.'"  *Rosario ex rel. Rosario v. Haywood*, 799 A.2d 32, 38 (N.J. Super. Ct. App. Div. 2002) (quoting *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)).

"[B]ecause insurance policies are adhesion contracts, courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness."  *Vorhees*, 607 A.2d at 1260.  Accordingly, "[w]hen an insurance agreement is to be construed the insured should be afforded protection to the fullest extent that any fair interpretation will permit."  *Kook*

---

[2] Markel also asserts that the Policy covers theft of property only if the property belongs to the insured's "clients," and because the trailers were Plaintiffs' property, rather than their clients', the theft in this case is not covered. (ECF 40-1.) Because Markel did not raise this defense until summary judgment and "never alerted [Plaintiffs] that it would seek to deny coverage on these grounds," we decline to consider this issue. *Continental Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1045 (D.N.J. 1993); *see also Cust-O-Fab Serv., LLC v. Admiral Ins. Co.*, 158 F. App'x 123, 129 (10th Cir. 2005); *Am. Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 588-89 (8th Cir. 2002).

*v. Am. Sur. Co. of New York*, 210 A.2d 633, 638 (N.J. Super. Ct. App. Div. 1965).  "'[I]f the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied.'"  *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 143 A.3d 273, 280 (N.J. 2016) (quoting *Butler v. Bonner & Barnewell, Inc.*, 267 A.2d 527, 532 (N.J. 1970)).  "'If there is any doubt, uncertainty or ambiguity in the phraseology of a policy, or if the phraseology is susceptible to two meanings, the construction favoring coverage must be adopted.'"  *Hampton Med. Grp., P.A. v. Princeton Ins. Co.*, 840 A.2d 915, 920 (N.J. Super. Ct. App. Div. 2004) (quoting *Aetna Ins. Co. v. Weiss*, 416 A.2d 426, 428 (N.J. Super. Ct. App. Div. 1980)); *see also Hudson E. Pain Mgmt.*, 46 A.3d at 1277 ("[P]otential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations.").

Finally, courts "must construe insurance policy provisions that grant coverage broadly and those that limit coverage narrowly, so as to maximize the insurance available to cover a loss."  *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 68 (D.N.J. 2007).  In other words, "[e]xclusionary clauses in liability insurance policies must be strictly construed in favor of the insured, with any doubt as to the existence of coverage resolved in a manner that affords coverage to the insured."  *Jeffer v. National Union Fire Ins. Co. of Pittsburgh*, 703 A.2d 316, 319 (N.J. Super. Ct. App. Div. 1997); *see also S.T. Hudson Engineers, Inc. v. Pennsylvania Nat. Mut. Cas. Co.*, 909 A.2d 1156, 1163 (N.J. Super. Ct. App. Div. 2007) ("Coverage clauses are interpreted liberally, whereas exclusions are strictly construed.").

  **B.** **The Prior Dishonest Act Exclusion does not bar coverage**

We begin by applying the plain meaning of the Policy to the facts of this case.  If Allison acted alone, the claim would be excluded because Allison's prior dishonest acts trigger the Prior Dishonest Act Exclusion.  If Allen acted alone, the claim would be covered because he is not

6

subject to the exclusion. But what happens when both Allison and Allen act together, as here? The Policy plainly contemplates and covers employee thefts committed by more than one person. (*See* Policy § A(1) ("We will pay for loss … resulting directly from 'theft' committed by an 'employee', whether identified or not, *acting alone or in collusion with other persons*." (emphasis added)).) However, the Policy does not address the situation before us, where one (and only one) of multiple colluding employees triggers the exclusion.

As discussed above, New Jersey law strongly favors coverage where the Policy could arguably be read both to cover and exclude a loss. New Jersey law similarly favors giving more weight to coverage provisions and less weight to exclusions, so as to err on the side of coverage. Pursuant to these principles, we interpret the Policy to provide coverage in this case. Moreover, had Markel intended to exclude coverage under these circumstances, it could have done so. *See Kook*, 210 A.2d at 638 (noting that when "evaluating a claim of an insured, consideration should be given as to whether alternative or more precise language, if used, would have put the matter beyond reasonable question"). Markel easily could have included a provision stating that in cases of collusion, the theft is excluded when at least one of the conspirators is subject to the Prior Dishonest Act Exclusion. Markel did not employ any such language. To the extent that there is gray area as a result, we must resolve all doubts in favor of coverage. *See Jeffer*, 703 A.2d at 319.

In addition, the Policy is arguably ambiguous as applied to the facts of this case. In other jurisdictions, courts have held that "[i]f the policy language is ambiguous as applied to the facts of a case, the construction most favorable to the insured should be adopted. Such construction applies particularly to exclusionary clauses." *Bauer Ranch, Inc. v. Mountain West Farm Bureau Mut. Ins. Co.*, 695 P.2d 1307, 1309 (Mont. 1985); *see also Pittsburgh Bridge & Iron Works v.*

*Liberty Mut. Ins. Co.*, 444 F.2d 1286, 1289 (3d Cir. 1971) (applying Pennsylvania law) (finding in favor of coverage where exclusion was "ambiguous as applied to the unusual facts of [the] case" and reasoning that "although the insurance industry may not have intended a comprehensive liability policy to cover the claim … it failed to effectuate this intent").  Even though we are not aware of any New Jersey case law specifically adopting or applying this principle, we believe the principle is consistent with New Jersey's canons of insurance policy construction.

Notably, because one could theoretically assert ambiguity, there is an open question as to whether this issue may be addressed on summary judgment.  The Third Circuit has held that when contract interpretation is central to the dispute, "summary judgment is appropriate only where the contractual language is unambiguous—*i.e.*, 'subject to only one reasonable interpretation.'"  *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)).  This procedural rule, however, appears to be at odds with the abundance of New Jersey case law specifically directing courts to resolve insurance policy ambiguities in favor of the insured.  Indeed, even the Third Circuit has resolved an ambiguity in favor of an insured as a matter of law on summary judgment.  *See Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 76-77 (3d Cir. 2009); *see also C.H. Heist Caribe Corp. v. Am. Home Assur. Co.*, 640 F.2d 479, 482 (3d Cir. 1981) (holding that "district court was correct in granting summary judgment on this issue by resolving the ambiguity" against the insurer).[3]

---

[3] Unlike this case, *KSI Trading* and *C.H. Heist* were declaratory judgment actions.  However, that distinction does not change the analysis.  In a declaratory judgment action regarding a coverage dispute, a court may deny summary judgment and submit the coverage issue to a jury.  *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 223-26 (3d Cir. 2009); *Essex Ins. Co. v. Newton Agri-Systems, Inc.*, 832 F. Supp. 1565, 1571 (S.D. Ga. 1993).

Furthermore, "'[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" *Rosario*, 799 A.2d at 38 (quoting *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J. Super. Ct. App. Div. 2000)). Rather, "'[a]n ambiguity in a contract exists if the terms of the contract are susceptible to at least two *reasonable* alternative interpretations." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 379 (3d Cir. 2016) (emphasis added) (quoting *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002)). In light of our directive to construe coverage clauses liberally and exclusions strictly, we are not convinced that any interpretation in favor of exclusion would be reasonable.

According to Markel, "[t]he import of the [Prior Dishonest Act Exclusion] is that if [a] [previously] dishonest employee colludes with another person, the loss will be excluded . . . unless the person with whom the dishonest person colludes is the same person who has knowledge of the prior dishonest act." (Def. Resp. 7-8, ECF No. 44.) We disagree.

Contrary to Markel's interpretation, the collusion language in the Prior Dishonest Act Exclusion applies to the prior dishonest act, and not the present theft giving rise to the claim. Consider the plain language of the exclusion:

> Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this Policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

(Policy § D(1)(b).) A fair interpretation of this provision is that there is an exception to the Prior Dishonest Act Exclusion where an insured "learned of" a past dishonest act through his own participation in that act. And that makes sense. The purpose of the Prior Dishonest Act Exclusion is to discourage the insured from employing an individual whose history suggests that he may engage in theft. Through its collusion clause, the exclusion gives the insured a pass with respect to having knowledge of an employee's past dishonest act when that knowledge could

9


only come from someone who joined the employee in committing the past dishonest act. Indeed, if a member, manager, or other official of the insured previously colluded with the employee to engage in a dishonest act, he likely would not admit it.

Finally, we note the potential moral hazard arising from our decision. Plaintiffs sought an insurance policy covering employee theft. Markel issued the Policy, but through the Prior Dishonest Act Exclusion, it cautioned Plaintiffs against employing individuals with a known history of dishonesty because doing so would increase the risk of loss. If Plaintiffs ignored that warning, Markel would not cover any losses arising from the unnecessarily increased risk.

On the one hand, it would seem unfair to strip Plaintiffs of coverage for situations in which multiple employees conspire to steal property, but only one of those employees happens to have a known history of dishonesty. But here, not only did Plaintiffs employ someone with a known history of dishonesty, they rehired an individual they previously fired for stealing company time. And now, according to Markel, Plaintiffs are getting a windfall even though they disregarded a known risk—and one that was flagged by the Policy.

Markel, however, could have avoided this issue. The risk of failing to write an insurance policy with utmost clarity falls on the insurer. We cannot choose an outcome based on what the Policy should have said. *See Hawkins v. Globe Life Ins. Co.*, 105 F. Supp. 3d 430, 439 (D.N.J. 2015) ("[T]he court must not write a better contract than the one the parties entered into.").[4]

---

[4] There are several causation doctrines that may have been relevant to this matter, e.g., efficient proximate cause, independent concurrent cause, and other doctrines addressing a situation in which a loss is caused by multiple events, some of which are covered and some of which are not. *See, e.g.*, 7 Couch on Insurance § 101:42-49. Because the parties did not raise any of these issues, we do not address them.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be denied, Plaintiffs' Motion for Partial Summary Judgment will be granted, and summary judgment as to liability will be entered in Plaintiffs' favor. The Court will confer with the parties regarding damages. An appropriate order follows.

                                           **BY THE COURT:**

                                           **/s/ R. Barclay Surrick**
                                           **R. BARCLAY SURRICK, J.**