IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL RETAIL SYSTEMS, INC. ET. AL.     :
                                          :          CIVIL ACTION
          v.                              :
                                          :          NO. 17-672
MARKEL INSURANCE COMPANY                  :

**<u>MEMORANDUM</u>**

**SURRICK, J.**                                      **JANUARY 27, 2023**

  Presently before the Court is a Motion for Partial Summary Judgment filed by Defendant

Markel Insurance Company.  We have previously established that Defendant is liable for the loss

in this case.  The only remaining issue is damages.  Defendant's Motion presents two damages-

related questions of law: (1) whether market value or the broad evidence rule is the better

standard to measure actual cash value ("ACV") in this case, and (2) whether the ACV should be

determined at the time of loss or at the time of payment.  For the reasons that follow, we hold

that the ACV of the trailers should be determined by their market value at the time of the loss.

## I.  BACKGROUND

  Plaintiff National Retail purchased a Commercial Crime Insurance Policy ("the Policy")

from Markel, an insurance agency.  *Nat'l Retail Sys. v. Markel Ins. Co.*, No. 17-672, 2020 U.S.

Dist. LEXIS 146327, at *1 (E.D. Pa. Aug. 14, 2020).  During the year that this policy was in

effect, two of National Retail's employees, Brian Allison and Joseph Allen, stole 74 Keystone

Freight trailers from their employer and sold them to Salvage America as scrap.  *Id*. at 3.

National Retail submitted a timely claim to Markel under the Crime Policy for the theft of the

trailers and claimed a total loss of $696,900.  *Id*. at 4-5.  Markel denied coverage, citing the Prior

Dishonest Act Exclusion in the policy.  *Id*. at 5.  On February 14, 2017, Plaintiffs National Retail

and Keystone Freight Corporation filed a Complaint against Markel for breach of contract.  In July of 2018, the parties each filed motions for partial summary judgment on the issue of liability.  *Id.*  Partial summary judgment was granted in favor of Plaintiffs.

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").  The presence of "a scintilla of evidence in support of the [non-moving party] will be insufficient" to carry the case to trial.  *Id.* at 252.  Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact is genuinely . . . disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).  When deciding a motion for summary

judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.   DISCUSSION

Defendant's Motion for Partial Summary Judgment presents two damages-related questions. First, which standard should be used to measure ACV in this case? Second, at what point in time should ACV be measured? For the reasons that follow, we conclude that market value is the better measure for ACV here, and that it should be determined at the time of the loss.

### A.   Principles of Insurance Policy Interpretation

The parties agree that the Policy should be interpreted under New Jersey law. "An insurance policy is a form of contract, and the interpretation of contract language is a question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012) (citations omitted). "Generally, an insurance policy should be interpreted according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). "[C]onstruing insurance policies, as with any contract, requires a broad search 'for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies.'" *Rosario ex rel. Rosario v. Haywood*, 799 A.2d 32, 38 (N.J. Super. Ct. App. Div. 2002) (quoting *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994)).

However, "[w]hen the provision at issue is subject to more than one reasonable interpretation, it is ambiguous, and the 'court may look to extrinsic evidence as an aid to interpretation.'" *Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129

A.3d 1069, 1075 (N.J. 2016) (quoting *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)).  A genuine ambiguity exists where "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Weedo v. Stone—E—Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979).  Where genuine ambiguities exist, the interpretation favoring coverage should be applied and the ambiguity should be resolved in favor of the insured.  *Cypress Point Condo. Ass'n v. Adria Towers, L.L.C.*, 143 A.3d 273, 280 (N.J. 2016).

### B.      Standard for Measuring Actual Cash Value

The first of two questions presented by Defendant's Motion is:  what is the better measure of ACV in the context of a Commercial Crime Policy that insured used trailers? Defendant argues that the ACV of the trailers should be calculated using the broad evidence rule under New Jersey law.  Plaintiffs argue that market value should be used.  We agree with Plaintiffs that market value is the better measure of ACV for used trailers.

With the principles of insurance policy interpretation in mind, we first turn to the Policy, which provides as follows:

> (a) Loss of or damage to "other property" … we will not pay more than the least of the following:
>> (i) The Limit of Insurance applicable to the lost or damaged property;
>> (ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or
>> (iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.
>
> (b) We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph x.(3)(a):
>> (i) Until the lost or damaged property is actually repaired or replaced; and
>> (ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
>
> If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(Policy, Def. MSJ Ex. 1, ECF No. 41-3, at § x.(3).)

Both parties agree that Section (a)(iii) applies here and, because the property has not yet been replaced, that Defendant must pay the "actual cash value" of the trailers.  However, the Policy does not define ACV.  We therefore find the term to be ambiguous and look to for guidance the New Jersey cases cited by the parties defining ACV in different circumstances.

As an initial matter, we note that this issue has not been extensively litigated and, in fact, the parties have cited no New Jersey cases—and we have found none—discussing the meaning of ACV outside of fire insurance or automobile insurance policies.  Nevertheless, the parties rely on four main cases that address the meaning of ACV:  *Messing v. Reliance Ins. Co.*, 187 A.2d 49 (N.J. Super. Ct. 1962), *Titus v. West American Ins. Co.*, 362 A.2d 1236, 1241 (N.J. Super. Ct. 1976), *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 389 A.2d 439 (N.J. 1978), and *Lett v. Wausau Underwriters Ins. Co.*, No. 20-9630, 2021 U.S. Dist. LEXIS 29642 (D.N.J. Feb. 17, 2021).

In *Messing*, the plaintiff asked the court to establish the standard to be used in ascertaining the ACV of a building damaged by a fire which was insured by a fire insurance policy that did not define ACV.  *Messing*, 187 A.2d at 50.  The court held that the broad evidence rule—which "permits the consideration of all evidence logically related to the formation of an accurate estimate of the value of the destroyed or damaged property"—should be used to ascertain the ACV of buildings insured by fire insurance policies.  *Id*. at 51.

In *Titus*, the plaintiff sought to have the broad evidence rule applied as the standard to calculate the ACV of a customized automobile under a policy that included coverage for liability, theft, and property damage.  *Titus*, 362 A.2d at 1238.  The court, "unrestrained by controlling precedent," held that the "better rule for determining the actual cash value of an

automobile . . . [is] its market value" because "there is a readily determinable market for used automobiles, and this value adequately compensates the insured and adequately reflects his reasonable expectations." *Id*. at 1240-41.

Two years later, in *Elberon*, the New Jersey Supreme Court held that the proper valuation method to ascertain ACV under a standard fire insurance policy is the broad evidence rule. *Elberon*, 389 A.2d at 444.  In so holding, the court noted that market value would not be a fair calculation of damages in cases involving buildings damaged by fire, as "a building ordinarily has no recognized market value independent of the parcel of property in entirety, land and building together." *Id*. at 443.

Finally, in *Lett*, the district court addressed how New Jersey law defines ACV in the context of an automobile insurance policy and ultimately held that market value, not the broad evidence rule, is the appropriate standard to determine ACV in automobile insurance cases.  *Lett*, No. 20-9630, 2021 U.S. Dist. LEXIS 29642 at *12.  The court distinguished *Lett* from *Elberon*, stating that the concerns involved in *Elberon* regarding the inability to properly measure the value of real estate by market value alone does not apply to motor vehicles.  *Id*. at *11, 12. Further, the *Lett* court noted that there was no authority that had extended *Elberon* to vehicles or automobile insurance policies; it had only been applied to similar factual circumstances involving fire insurance coverage for buildings.  *Id*. at 11.

Applying similar reasoning, we conclude that market value is the better measure of used trailers.  While not statutorily regulated or as commonplace as automobile insurance policies, the heart of the reasoning given in *Lett* and *Titus* for using market value to determine the ACV for vehicles is nevertheless applicable here.  Used trailers are more akin to motor vehicles than they are to buildings.  The most crucial similarity is that there is a readily determinable market for

used trailers, as there is for vehicles.  Using the readily determinable market for used trailers to determine their ACV would "adequately compensate[] the insured and adequately reflect[] his reasonable expectations." *Titus*, 362 A.2d at 1240-41.

Moreover, we do not interpret *Elberon* to have set the standard in New Jersey for valuing ACV in all insurance contexts, but rather only for factually similar circumstances (i.e., fire insurance policies for buildings).  The reasoning set forth in *Elberon* for using the broad evidence rule would not make sense in this case, because there is no concern that market value alone could not properly measure the ACV of used trailers, as is the case with real estate due to the inability to separate structures from the land on which they sit.  *See Lett*, No. 20-9630, 2021 U.S. Dist. LEXIS 29642 at *12 ("Unlike a building, in which valuing the structure separate from the underlying real estate may raise valuation difficulties, Plaintiff points to no similar concerns as to a motor vehicle.").  There is no need for a flexible, wholistic test to determine the ACV of insured property that has a readily determinable market, such as vehicles or trailers.

As in *Lett*, Defendant has cited no cases, and we have found none, which apply *Elberon* to circumstances outside fire insurance policies for buildings.  We do not agree that the broad evidence rule is the appropriate measure for determining the ACV of used trailers in the context of a commercial crime policy, as market value will result in a readily determinable and reasonably expected measure of ACV and, therefore, of Plaintiff's damages.

### C.     Actual Cash Value is Determined at Time of Loss

The second of two questions presented by Defendant's Motion is:  should the ACV of the trailers be determined at the time of loss or at the time payment is made?  This question stems from the Policy's silence on when the ACV should be determined, stating only that the insurance company will pay the ACV, but not specifying when the ACV should be determined.  Because of

this silence, Plaintiffs assert that the Policy is ambiguous and, therefore, that the Court must adopt their interpretation of the Policy (that the ACV should be determined at the time payment is made). However, an ambiguity does not arise simply because the parties have offered two conflicting interpretations. *Polarome Int'l, Inc. v. Greenwich Ins. Co.*, 404 N.J. Super. 241, 259, 961 A.2d 29, 39 (Super. Ct. App. Div. 2008). Rather, a genuine ambiguity exists only if the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Id*. In addition, "both [parties'] interpretations must reflect a reasonable reading of the contract language." *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (Super. Ct. App. Div. 2000). Even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, "where another interpretation favorable to the insured *reasonably* can be made that construction must be applied." *Ellmex Const. Co., Inc. v. Republic Ins. Co.*, 494 A.2d 339 (App. Div. 1985), certif. denied, 511 A.2d 639 (N.J. 1986) (emphasis added). Principles of law urging liberal interpretation of policy language in favor of coverage do not permit what has been termed the, "perversion of language or the exercise of inventive powers to create ambiguities where they do not fairly exist." *National Surety Co. v. Allstate Insurance Co.,* 280 A.2d 248 (Law Div.1971) (quoting *James v. Federal Insurance Co.*, 73 A.2d 720 (1950)).

In this case, though the parties offer conflicting interpretations, we do not find Plaintiffs' proposed interpretation to be reasonable and, therefore, find no ambiguity in the policy language. While Plaintiffs argue that it is reasonable to interpret the Policy to require calculation of the ACV at the time of payment, Plaintiffs have not identified a single case in New Jersey or elsewhere where the calculation of ACV was determined at any time other than the time of loss. The Court's research also revealed no such case. In fact, the vast majority (if not all) of the cases

and other authority found on this issue specifically include the qualifier "at the time of loss" in the very definition of ACV.  *See, e.g.*, Glossary of Ins. Terms, NJDOBI, available at https://www.nj.gov/dobi/ins_ombudsman/om_gloss.htm (last visited Jan. 35, 2023) (defining ACV as "[a]n amount equivalent to the replacement cost of a stolen or damaged property *at the time of the loss*, less depreciation").  In addition, adopting Plaintiff's proposed interpretation of the Policy language would result in unending speculation about the amount of Plaintiffs' damages based upon some hypothetical date on which Defendant would pay.  Any attempt to determine that date in order to accurately calculate damages would be nearly impossible, considering the date that Defendant will pay depends on a multitude of arbitrary factors such as the duration of the trial, jury deliberations, appeals, and even collection efforts.  Therefore, Plaintiffs' proposed conflicting interpretation would give an unreasonable meaning to the provision in the Policy, rather than a reasonable one.  *Krosnowski v. Krosnowski*, 126 A.2d 182, 188 (N.J. 1956) ("the words [of a contract] are to be given a reasonable meaning rather than an unreasonable one").

Plaintiffs also assert that their interpretation of the Policy is reasonable because they are entitled to all foreseeable damages as a result of Defendant's ongoing breach, including the increase in value of the trailers since they were stolen in 2016.  However, in contract cases, it is well-settled that compensatory damages—damages naturally flowing from the breach—are limited to the debt owed plus interest.  *Walsh Sec. Inc. v. Cristo Prop. Manamgement, Ltd.*, No. 97-3496, 2012 U.S. Dist. LEXIS 172950, at *4 (D.N.J. Nov. 28, 2012) (citing *Polito v. Continental Cas. Co.*, 689 F.2d 457, 461 (3d Cir. 1982)).  Prejudgment interest on contract claims is allowed in accordance with equitable principles and is meant to compensate the Plaintiff for the period of time that defendant withheld payment.  *N. Bergen Rex Transp. v.*

*Trailer Leasing Co.*, 730 A.2d 843, 851 (N.J. 1999).  Added cost incurred by virtue of a delay in payment caused by inflation is considered consequential damages, rather than compensatory damages, in contract cases.  *Polito*, 689 F.2d at 462.  In New Jersey, consequential damages are not recoverable under a breach of contract claim.  *Walsh*, 2012 U.S. Dist. LEXIS 172950, at *5-6 (dismissing consequential damages because the bad faith claim that would have provided the basis for those damages was already dismissed).  We reject this argument by Plaintiffs.

Finally, the unreasonableness of Plaintiffs' proposed interpretation of the Policy is compounded by the fact that Plaintiffs themselves did not interpret the Policy in this way for the first five years of the case.  In fact, it was not until filing their trial brief in April of 2022 that Plaintiffs raised this interpretation of the Policy.  Previously, Plaintiffs sought damages based on the value of the trailers as determined at the time of loss.  *Compare* Bernstiel Cert., ECF No. 99-6, Ex. 4, at ¶ 15 (identifying damages as $625,000.00 in 2017), *and* Pls.' Motion in Limine, ECF No. 50-1, at 8, 11 (alleging Plaintiffs' damages to be $642,400 in 2020 by valuing what the trailers were worth in 2016), *with* Pls.' Trial Memorandum, ECF No. 84, at 8-9 (asserting damages between $1,616,186 and $2,559,953 in 2022 based upon then-current market conditions for similar trailers).  Plaintiffs fail to address this discrepancy in their opposition to the Motion.  It would appear that Plaintiffs alleged "reasonable expectation" of damages is not based on the actual language of the Policy, but is instead seeking to punish Defendants for their breach.

For these reasons, we interpret the Policy to require Defendants to pay the ACV of the trailers as determined at the time of loss.

**IV.      CONCLUSION**

For the foregoing reasons, the ACV of the trailers should be determined by their market value at the time of the loss in this case.  Therefore, we will grant the Motion in part and deny it in part.

BY THE COURT:

*/s/ R. Barclay Surrick*_____
R. BARCLAY SURRICK, J.